# GEORGES CREEK COAL AND IRON COMPANY'S LESSEE, *vs.* C. E. DETMOLD.

The plaintiff in this case, in order to recover, must show that the deed in question did not vest the legal title in some other person, so as to authorize such other person to maintain ejectment. But the outstanding title must be such a title, that such third party might recover against either party to the suit.

Where a party mortgages land, and there is an affirmative covenant, that he shall continue possessed of the land, with power to take the profits and issues until default, and a time is fixed beyond which his time of possession shall not go, such affirmative covenant amounts to a redemise. No such covenant or redemise will be inferred from a covenant, that the party will not sell or lease until after notice.

The plaintiff's lessor had conveyed the premises in trust, to secure the payment of certain claims, but with a proviso, that until default shall be made in the payment of any part of said claims or interest; the company was peaceably to hold and enjoy the same, and receive the rents, issues and profits, and from time to time, with the consent of the trustees or the survivor, to make leases of any part of the premises, and to grant licences and privi-

29      v. 1

leges, for raising, working and conveying the coal, iron ore, &c., this did not hinder the lessors of the plaintiff from making the lease, declared upon in this suit.

Although the lease declared on in ejectment, is in point of fact a fiction, it is essential to the plaintiff's recovery, that his lessor should have been possessed of a title, to make such a lease. But the trustees here have no right to the possession until default, and can maintain no action against either party. The outstanding title, therefore, will not avail the defendant, as it would not enable the trustees to recover of the plaintiff's lessor.

The intention of the registration acts.

APPEAL from Allegany county court.

This is an action of ejectment, instituted 27th September 1849, by the appellant, to recover a tract of land in Allegany county, called "Commonwealth."

The single question in this case, to be decided by the court, was whether a deed bearing date 13th December 1845, executed by the plaintiff to William Band, Edward Whitehouse and John Alexander; and conveying to them in trust, the land in controversy, was a bar to the plaintiff's recovery? The title of the plaintiff until the date of that deed, is not controverted, and every other point which the record presented was abandoned.

The deed of the plaintiff to Band and others, states, that the appellant is about to borrow large sums of money on its bonds, bearing the same date with the deed, and payable, the principal thereof, on the 1st January 1861, and the interest on the first day of July 1846, and the 1st day of January and July thereafter. The conveyance is made to secure the payment of the said bonds; and in trust, that if the company shall at *any time hereafter* make default in payment unto the person or persons entitled to receive the same, of the principal sum and sums of money secured, to be paid by the aforesaid bonds or of any of them, or of the interest or any part of the interest to accrue, or to become due, or payable thereon, according to the form and effect of said bonds, *it shall and may be lawful to and for the said trustees to enter upon and possess themselves of the aforesaid premises,* and the same or any part thereof, to sell and dispose of, for pay-

ment of said bonds. But it is provided, and declared to be the intent and meaning of said deed, that *until default shall be made* by the said company, in payment of the sums of money, hereby charged upon the aforesaid premises, and interest, or of some part thereof, according to the time or times limited for the payment thereof, *it shall* and may be lawful for the said company *peaceably and quietly to have, hold, occupy, possess and enjoy, all and singular the premises hereby granted, with the appurtenances and the rents, issues and profits thereof, to have, receive, and take to its own particular use and benefit; and from time to time, with the consent of the said trustees, to make leases of the said premises or any part or parts thereof, and to grant licenses and privileges for raising, working and carrying the coal, &c.*

The defendant having read in evidence this deed, to show the legal title to be out of the plaintiff, (whose objection to the reading of it was overruled by the court,) then prayed the court to instruct the jury, that if they shall believe from the evidence that said deed was executed by the *plaintiff*, and that the land therein mentioned is the same land for the recovery of which this action is brought, that the *plaintiff* having passed the legal title out of himself, prior to the institution of this suit, and subsequent to the lease of the defendant, of the 11th October 1845, is not entitled to recover. Because the court gave this instruction, the plaintiff excepted, and the verdict being for the defendant, this case is brought by appeal to this court.

The plaintiff's lessor had on the day mentioned in the above prayer, executed a lease to the defendant himself; notice has not been taken of it, because it is immaterial in deciding the question here to be decided, except perhaps to mention that the term had not expired, but the plaintiff insisted that it had been forfeited.

The case was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

Georges Creek Coal and Iron Co's Lessee, *vs.* Detmold.

By *Alexander and McMahon* for the appellant, and *Pearre and Schley* for the appellee.

*Alexander* in behalf of appellants contended, that the deed of trust operated, by way of reservation, or exception or re-demise, to vest in the company a present estate in the premises, sufficient to support the lease on which this action is brought; and also, that the lease may be sustained as a valid execution of the power to make leases, which is reserved by the deed of trust to the company.

The prayer assumes that the legal title *was* in the lessors of the plaintiff, but passed from them by the deed of 13th December 1845; we maintain, that unless a title which would have enabled the trustees to maintain an action of ejectment, was in them, the action cannot be defeated by that deed. As to the title necessary to maintain ejectment: 2 *H. & J.*, 125, *Hall vs. Gettings.* 6 *Peters*, 302, *Greenleaf vs. Burk.* 3 *Wash., C. C. R.*, 498, *Foster vs. Joice.* See also 1 *Wash. C. C. Reports*, 206. A mortgagor has the legal title against all but the mortgagee. 5 *Halst.*, 156. 7 *Johnson*, 278. 6 *Hill*, 472. 9 *Alabama*, 633. 26 *Ohio*, 138. He takes the rents to his own use.

The title of the mortgagee now descends to his executor. Act of 1833, ch. 181. Act of 1839, ch. 26.

What quantity of estate will support an ejectment? A tenant for a brief term may sue during tenancy. 3 *Camp.*, 447. 18 *John.*, 302. 1 *Saund. Rep.*, 112, *note. Adams on Ejectment*, 69. 20 *Eng. C. L. R.*, 171. *Run. on Eject.*, 9. 1 *Blackford*, 134.

Right of possession is the question in ejectment. No matter how minute the estate is. 1 *Blackford*, 26. 1 *Lev.*, 170. *Siderfin*, 344.

We do not rely entirely upon this deed being a mortgage, but also upon its special provisions in regard to the possession of the premises. It is certainly a deed, to secure the payment of debts. The trustees when default is made have a right to enter, but until there is a forfeiture the company is

to hold, and with the consent of the trustees, the power is reserved to it, to make leases. Whether that consent had been given or not, was not made a question in the court below, and the prayer seems to assume that it was not deemed material.

See *2nd Salk,* 675. *Davis vs. Speed, Plowd.,* 524.

The reservation in this deed may be considered a redemise to the company. 5 *Ba. Abridg.,* 601, *(New ed.,)* title, *Lease. (K.)* As to what is a lease: See *Croke Charles,* 207. 5 *T. R.,* 97, 98. *Hob.,* 35. 1 *Saund. Reports,* 181. 4 *Kent's Com.,* 96.

Under the circumstances, mortgagor is to be considered tenant for years: 1 *Cruises Dig.,* 100. *Greenleaf's Ed.,* 43. *Law Library,* 399, 401. 69 *Law Lib.,* 375, 376. 4 *Kent Com.,* 154, 157, 160.

The company had the right of possession, and could not be disturbed by the trustees. 6 *G. & J.,* 72. 3 *Mass.,* 152. 11*th Pick.,* 475. 9 *Alabama,* 633. 7 *Blackford* 1. 3 *Fairfield,* 482. 4 *Burr.,* 2208. 32 *Eng. C. L. Rep., Wilkinson vs. Hall,* 226, 230. 4 *Mees. and Welsby,* 409, 413. 8 *Mees. and Welsby,* 553, 564. The question in that case was not as here, on an express agreement, but whether there was any agreement, that the mortgagor should hold? 59 *Eng. C. L. Rep.,* 960, 961, shows that the case in 42 *Eng. C. L. Rep.,* 612, 615, *Doe vs. Day.,* is no authority, where there is, as in this case, a covenant to hold.

As to certainty and uncertainty. 3 *T. Rep.,* 258, top-page.

*Pearre* for appellee.

In Maryland a plaintiff in ejectment must have a *legal* title, or he cannot recover. He must have a legal title and right of entry, and it is not necessary for the defendant to show any right of possession. A mortgage or deed of trust passes the legal estate. 27 *Eng. C. L. R.,* 268. *Doe vs. Edwards,* 9 *Cowen,* 86. *Archbold Land. and Tenant,* 219, 296. *Adams on Ejectment,* 276.

As to the doctrine of redemise or lease, the case in 5 *Ba.,*

601, which is relied on, shows that there must be an intention to lease. See also *Archb. on Land. and Ten.*, 19, 22. We contend that there existed no such intention here. There are in this deed no words of grant or demise, they are words of covenant.

If this supposed lease is to be given *in futuro*, it was only an agreement to make a lease.

The trustees could not convey or lease any thing more than the reversion, at the expiration of Detford's lease.

When a tenant is in possession, the mortgagor cannot be tenant. 1 *Powel on Mort.*, 157, *note c.*

3 *Eng. C. L. Rep.*, 226. *Wilkinson vs. Hall*, cited for appellant. Here there is an express proviso, that the mortgagor shall have possession. This case is overruled by *Doe vs. Goodwin*, 8 *Mee. and Welsby*, 563, and also by *Doe vs. Day*, 42 *Eng. C. L. R.*, 612, 615. In 53 *Eng. C. L. R.*, 848, we have a case where there was a positive covenant, for possession of personal property. See also 9 *G. & J.*, 77.

As to the difference between a covenant and a grant. See 1 *Saund. on Plead. and Evidence*, 388.

If a redemise, it is for more than seven years, which it cannot be, because then it is necessary that the trustees should acknowledge it, 1715, ch. 47, sec. 8 & 9. 1766, ch. 14, secs. 2 & 3.

11 *G. & J.*, 450. A lease for more than seven years, if not acknowledged and recorded, is void as a lease, and passes nothing. 1 *Sheph. Touch.*, 86. Intention of a redemise would be against law and therefore wrong.

The time is too uncertain; in the proviso to make this a redemise, from six months to six months, and so on, for seventeen years, will not do. 2 *Shepherd's Touch.*, 272. A good lease must have a certain time to commence and also to end, although it may be said, that it may be defeasible within the time. *Archb. Land. and Tenant*, 26, 27.

There is no consent of the trustees, to the lease to the plaintiff. *Burton on Real Property*, 134. *Adams on Eject.*, 209. 8 *Peters*, 214. The deed here merely gives a *power* to make a lease; it gives no legal title.

## DECEMBER TERM, 1851. 231

Georges Creek Coal and Iron Co's Lessee, vs. Detmold.

*Archb. on Land and Tenant,* 13. Power must be strictly pursued.

*Schley* on the same side.

Although a tenant cannot deny the title of his landlord, when the lease was taken by him, yet he may say the title has passed away. The deed gives a title and a seisin in the trustees.

As to trust or use: 31 *L. L.*, 385, 386, 389, 390.

A party, to support ejectment, must have a legal seisin. In *Matthews vs. Ward,* 10 *G. & J.,* 443, it is said, a trustee may support ejectment against *cestui que trust,* and a court of equity only can relieve the *cestui que trust* by an injunction. The possession of the *cestui que trust* is the possession of the trustee.

This deed is not like a mortgage; it is to reconvey, on a certain contingency, to the company.

A deed cannot convey Blackacre, reserving a term of years, though it might reserve a rent. 30 *Law Lib.,* 156, 159.

As to exceptions and reservations: 29 *Eng. C. L. Rep.,* 199, *Doe vs. Lock.* This was a reservation. See 17 *Eng. C. L. Rep.,* 307, *Faney vs. Scott,* as to a reservation.

The question of redemise was never before made in Maryland. There must be an intention to redemise,

32 *Eng. C. L. Rep.,* 226, *Wilkinson vs. Hall,* is a case somewhat like this. But there both parties signed the instrument, and the case is overruled in 42 *Eng. C. L. Rep.,* 615 and 616. The case in 8 *Mee, and Wels.,* is a strong case for defendant. That was decided to be a covenant, and not a lease.

No estoppel by a deed poll against the party who does not sign. 30 *Law Lib.,* 300, *note* 14,

No certainty, and for that reason, there can be no lease. No conveyance by trustees acknowledged and recorded. 1 *G. & J.,* 376. 11 *G. & J.,* 351. There must be legal title and right of possession. *Burton on Real Property,* in 23 *Law Lib.,* 60, 61.

Georges Creek Coal and Iron Co's Lessee, *vs.* Detmold.

A covenant or contract cannot sustain ejectment.

8 *Peters*, 214. A man, to maintain an ejectment, must have power to make a lease. Here the company could make a lease with the consent of the trustees. That consent is not shown; the lease is therefore void. 2 *Tyrwhitt's Rep.*, 289.

*McMahon* for the appellant.

The argument of the counsel would deprive both the company and the trustees of a right to institute an ejectment. The defendant came in under our title. If a part of the reversion is in us, we can support ejectment. The action may be supported by any one who has a legal title, no matter how small it may be. 3 *Bac. Abr.*, 257. 6 *H. & J.*, 173. 1 *H. & G.*, 173. 1 *Blackford*, 134.

A copy holder may support an ejectment. 54 *L. L.*, 476. A tenant at will also. See 3 *T. R.*, 17, *L'd Kenyon*, as to those fictitious leases. See, also, 13 *East.*, 210.

If the trustees could not recover in ejectment against us, then we have the legal title. When deed was made the company had only a reversion. A lease of the reversion may be made. *Co. Lit.*, 215, *a.* 1 *William's Saunders*, 287, 288. 2 *Lomax*, 86, 88. *Doe vs. Lister*, 42 *Eng. Com. L. R.*, 611. *Coote on Mort.*, 376.

The instrument intends to make the company the landlord of Detmold.

9 *G. & J.*, 79. 3 *Gill*, 234. The intention is to be ascertained from all parts of the deed taken together.

The words in this deed would make a lease, if used in a paper signed by the trustees. 3 *Mass.*, 152. 9 *G. & J.*, 79.

The cases cited on the other side show, that a provision, like that in this deed, will make a redemise, if the time is sufficiently certain. 5 *Bac.*, 610. 1 *Lomax*, 60. 2 *Cruise*, 75. 43 *Law Lib.*, 399, 401.

In *Doe and Day*, there was a holding after the forfeiture. In the case, 8 *Mee. and Wels.*, there was no affirmative covenant in favor of the mortgagor, nor was there in 55 *Eng. C. L. Rep.*

Deed poll sufficient to make a redemise. 11 *Pick.*, 475, 478. See 6 *Watts*, 362.

As to reservation of rent: 31 *L. L.*, 69, 71. 2 *Blk. Com.*, 14. 3 *Hill*, 347. 3 *Fairfield*, 482.

As to certainty: 4 *Cruise Dig.*, 56. 31 *Law Lib.*, 81. 2 *Lomax*, 86.

The mortgagor should be considered as real owner. 4 *Kent Com.*, 157, 159.

Mortgagees' title passes or descends to the executor.

American decisions in regard to the mortgagor's title: 20 *Maine*, 116. 6 *Hill*, 473. 12 *Vermont*, 695. 15 *N. H.*, 54. 15 *Conn.*, 556. 5 *Hal.*, 176. 10 *Ohio*, 433. 16 *Ohio*, 138. 1 *Alabama*, 708.

*Schley*, in answer to a remark by *Mr. M.*, said, if lease be void, and tenant goes into possession, he is, to be sure, tenant from year to year, but he is not in *under* the lease.

LE GRAND, C. J., pronounced the opinion of the court.

The first exception having been abandoned, the only question for this court to determine, is,—did the deed of the 13th day of December 1845, deprive the lessor of the plaintiff of the title necessary to sustain an action of ejectment?

It is conceded by the form of the prayer, that if this deed does not bar the right of recovery, that it still exists.

By the deed the *locus in quo* was conveyed to the grantees, subject however to a proviso, to use the language of the instrument: "provided, nevertheless, and it is declared to be the true intent and meaning of these presents, and of the parties hereunto, that if the said Georges Creek Coal and Iron Company, shall well and truly pay unto the said holder or holders of the aforesaid bonds, the principal sums of money secured to be paid thereby, with interest thereon, according to the tenor and effect thereof, without any deduction or abatement whatsoever, then and from thenceforth these presents, and every thing herein contained, shall cease and determine, and be utterly null and void, anything herein contained to the contrary hereof, in anywise, notwithstanding. And lastly, it

is further understood and agreed upon, by and between the parties hereunto, that until default shall be made by the said company in payment of the sums of money hereby charged upon the aforesaid premises and interest, or of some part thereof, according to the time and times limited for payment thereof, it shall and may be lawful for the said company peaceably and quietly to have, hold, occupy, possess and enjoy, all and singular the premises hereby granted, with the appurtenances; and the rents, issues and profits thereof, to have, receive and take to its own particular use and benefit; and from time to time, with consent of the said trustees, and the survivors and survivor of them, and the heirs of the survivor, to make leases of said premises, or any part or parts thereof, and to grant licenses and privileges for raising, working and carrying the coals, iron ores," &c.

The defendant rests entirely on possession, and insists, that the legal title is not in the plaintiff. It is undoubtedly true, that to enable the plaintiff to recover, it is incumbent to show the deed in question did not vest the legal title in some other person, so as to authorize such other person to maintain ejectment. Where a defendant relies upon an outstanding title in a third party, it must be such a title that such third person could recover against either party to the suit. *Hall vs. Gittings,* 2 *Harr. & John.,* 125.

The instrument relied upon in this case was a mortgage, which, by its terms, authorized and *guaranteed* to the company the possession and enjoyment of the land until default was made, and the question is, did this instrument secure to the company such legal title and right of possession as are essential to the maintenance of this action?

Neither the case of *Jamison vs. Bruce,* 6 *Gill & Johnson,* 72, nor the case of *Hope vs. Hutchins,* 9 *Gill & Johnson,* 77, settle the question involved in this. In the first of these cases, the court considered merely that class of mortgages, in which there were no covenants securing to the mortgagor the complete enjoyment of the property until a certain specified time, or until the happening of a specified contingency. In

Georges Creek Coal and Iron Co's Lessee, vs. Delmold.

such cases they held the mortagee had the right to enter at pleasure ; and that a mortgagor, in the case of a mortgage of personal property, could not maintain trespass against the mortgagee for the asportation of the property. But it is clearly inferrible from the whole character of the opinion of the court, that had there been a covenant in that case, secur- ing to the mortgagor the enjoyment of the property, that he could have maintained trespass.

The case of *Hope vs. Hutchings,* does nothing but enun- ciate a very obvious principle. It was a controversy between the donees and the administrators of the donor, and the only question was to whom belonged the *issue* of a negro woman, (the subject matter of the gift,) born during the life- time of the donor. The court held that the increase was a part of the profits, and followed the direction given to the mother by the gift. Adopting the intention of the parties as the governing rule of interpretation, the court held it to have been "manifest from the terms of the instrument, that she in- tended to appropriate and carve out for her own use, no greater interest in the *profits* than she had reserved in the principal from which the profits were to be derived ; and it is not to be understood to be denied, or questioned," continues the court, "that upon her death, all her interest in the labor and services of the mother, immediately ceased and termi- nated." The only question in the case, obviously was, what was the intention of the party making the gift? and this as- certained, the court, by its decision, gave it efficacy.

In the case now under consideration, there is no difficulty in ascertaining the intention of the parties. It was, mani- festly, that the grantors should have the use and profits as ab- solutely as before the execution of the deed, until default, as specified in it.

In the case of *Wilkinson vs. Hall,* 3 *Bingham,* 508, a case similar to the one now before the court, it was expressly held, that a covenant that a mortgagor should hold the premises and take the rents, issues and profits for his own use, till de- fault should be made in the payment of principal and interest,

operated as a redemise to the mortgagor until default. And this decision is declared to be in conformity with the doctrine laid down in *Bacon's Abridgment, tit. Leases, K,* "That whatever words are sufficient to explain the intent of the parties, that the one shall divest himself of the possession, and the other come into it for such a determinate time, such words, whether they run in the form of a license, covenant, or agreement, are of themselves sufficient, and will, in construction of law, amount to a lease for years, as effectually as if the most proper and pertinent words had been made use of for that purpose."

If the case of *Wilkinson vs. Hall* be law, then it is perfectly conclusive of the case before us, for the prayer concedes there has been no default on the part of the lessors of the plaintiff, and that there has been on the part of the defendant. But it is contended, that it has been overruled by the case of *Doe* on the demise of *Parsley et al., vs. Day,* 42 *Eng. C. L.* 612. We do not so understand that case; it was wholly different, in its facts, from the case of *Wilkinson vs. Hall;* for, unlike that case, there was no covenant that the mortgagor should possess and enjoy the premises until the default; the stipulation being, that if the mortgagor did not pay by a certain day, the mortgagee, on giving one month's notice, might enter. The court expressly say, there was not *"any affirmative covenant whatever, that he should hold at all."* In the case of *Lyster and others vs. Goldwin,* 42 *Eng. C. L. R.,* 610, decided by the same judge who decided the case of *Parsley vs. Day,* it was held, that where a mortgage deed for securing payment of an annuity, conveyed the land in trust, among other things, to permit the mortgagor to receive the rents and profits, until default, for sixty days, in payment of the annuity, that the conveyance operated as a redemise to the mortgagor until default; and that a notice to quit given by him in his own name to a tenant, let into possession by him before the mortgage, enabled him to recover in ejectment on his own demise. The case is clearly an affirmance of the principle recognized in *Wilkinson vs. Hall.* The case of *Roylance vs. Lightfoot,* 8 *Meeson and Welsby* 552, in no way affects it, for

in that case as in the case of *Pursley vs. Day*, there was no affirmative covenant, that the mortgagor should have, and hold and enjoy the property until default.    See also *Wilkinson vs. Goodier*, 59 *Eng. C. L. R.*, 957.

The principle which we gather from these cases, if they are at all to be respected, is this, that where a party mortgages land, and there is an *affirmative* covenant that he shall continue possessed of the land, with full power to take the profits and issues until default, and a certain determinate time is fixed beyond which his right of possession shall not go, that such affirmative covenant amounts to a redemise; but that no such redemise will be inferred, or implied from a covenant, that the mortgagee should not sell or lease, (even if construed a covenant not to enter,) until after notice; since both the certainty as to the time, and the affirmative words of the right of enjoyment, are wanting, which are essential to create a term for years.

In *Newell and Others, vs. Wright*, 3 *Mass.*, 138, a case most ably and elaborately argued, Judge Parsons held, that there may be an agreement that the mortgagor shall retain possession until condition broken, which shall bind the mortgagee: *in which case the mortgagor may demise the estate to a stranger*, and receive the rents to his own use.

In many of the States of the union, courts of law have held mortgages in the light in which they are undoubtedly intended by the parties, as mere security for the payment of money: this is now the aspect in which they are universally viewed in courts of equity.

Without meaning to be understood as endorsing them to the full extent to which some of them go, but adverting to them merely as an indication of the spirit which seems to guide the courts of the present day, we refer to 9*th Alabama*, 637.    6 *Hill*, 473.    20 *Maine*, 111.    15 *Connecticut*, 556. 5 *Halstead*, 156.

There is no decision in this State which, in any just sense, can be construed as denying the right of the mortgagor to maintain ejectment against a third party, where the mortgage

contains an affirmative covenant, that the mortgagor shall possess and enjoy until default; and finding decisions both in England and in this country which sustain the right, and recognizing the equity of it, we feel disposed to adopt it, because it subserves the purposes of justice, to promote which, courts are established.

But it has been urged with great earnestness, and marked ability, that there can be no recovery in this case; because, as it is alleged by the terms of the deed of the 13th day of December 1845, the lessor of the plaintiff was precluded from making the lease mentioned in the declaration. Although the lease declared on is in point of fact a mere fiction, yet it is essential to the plaintiff's right of recovery, that his lessor should have been possessed of a title enabling him to make such a lease. *Wood vs. Grundy*, 3 *Harr. and John.*, 13.

This being so, the question is, does the deed inhibit the lessors of the plaintiff from making leases *without the consent of the trustees*, until default be made? It is a sound rule of construction, that if possible, unless it contravene some rule of law, every part of a deed and the intention of the parties shall prevail. It is, also, a well established principle, that the title to reality cannot be held in abeyance; it must, at all times, reside somewhere, and in such force, that an injury to the possession can be redressed by an action at law. Now if the construction contended for by counsel for the appellee be correct, then the title to the *locus in quo*, resides nowhere; and although it be confessed the defendant has no right to the possession; that whatever rights he had, have been forfeited, yet there is no one authorized to sustain ejectment, and dispossess him. This view would, indeed, present an anomolous state of things.

We have already shown that where a defendant relies *exclusively* upon an outstanding title in a third party, which is the case here, *it must be such a title that such third person could recover against either party to the suit.* 2 *Harr. and John.*, 125. And in the case of *Wilson vs. Inloes*, 11 *Gill and John.*, 359, this court held, that to enable the plaintiff to

recover, it is necessary he should have both the *legal title* and the *right of possession.* Now it is clear from those decisions, that the trustees could not maintain ejectment, because until default of lessors of the plaintiff, they have no right to the possession ; and this being so, it equally follows, that the outstanding title set up to defeat the recovery in this action, is not such an one as can be successfully availed of by the defendant, because it would not enable the trustees to recover against the lessor of the plaintiff.

The construction which we place on the deed of the 13th day of December 1845, is this :—that the grantors have the right to make leases, provided they do not extend beyond 1861, *without* the consent of the trustee, and *with their consent,* leases for any length of time. The manifest intention of the instrument was to create a security for the payment of the sum of money to be borrowed, with interest thereon ; and until default by the grantor, it was "peaceably and quietly to have, hold, occupy, possess and enjoy, all and singular the premises granted, with the appurtenances ; and the *rents* and *profits* thereof, to have, receive and take to its *particular use and benefit.*" It was undoubtedly the intention of the parties, that the grantor was to have the privilege to work the mines, &c., until default, and from this source, if possible, to draw the means to meet the liability created by the mortgage. Whether the company by its own employees, or by its lessees, worked the mines, could make no difference to the parties for whose security the mortgage was given. The maxim, *expressum facit cessare tacitum,* has no application to the case. It never could have been designed to make the right of the grantor depend on the consent of the trustees, and the clause which follows the one quoted, and which authorises the company to make leases with the consent of the trustees, must be considered in connection with the right reserved and guaranteed to the company, to use and occupy until default ; and when so viewed, it must be taken as having reference to leases to be made for a period extending beyond the year 1861 ; or to be of force notwithstanding any default of the company before

the year 1861. Such a construction effectuates, what to the court appears to have been clearly the intention of the parties. Any other would be productive of injustice, and would be to place the right of enjoyment and use, guaranteed to the grantor until default, at the mercy of the trustee, without subserving in any manner the interests of the parties for whose security the instrument was executed.

The objection, that this is a deed poll and not an indenture, is not available for the purpose for which it was invoked. See the clear and explicit opinion in *Flagg vs. Flagg*, 11 *Pick.*, 477.

Nor is there force in the argument, that the construction which we place on the deed, renders it, so far as the plaintiff is concerned, useless within the purview of our registration acts of 1715 and 1766. All that is required by those acts is, that the instrument creating an estate for more than seven years in lands, shall be acknowledged and recorded. This has been done in the case before us. Where the same deed creates an estate in the grantee with a *reservation* in favor of the grantor, acknowledgment by the grantor is all that is required; there is no necessity for the execution of another deed to secure and give efficiency to the reservation. Principally, among other things, the registration acts were intended to guard against fraud, and to make of record the titles of persons, instead of allowing them to rest in the uncertain recollection of witnesses, who from forgetfulness or fraudulent motives, would frequently represent things differently from what they really were. Our interpretation of the deed in nowise conflicts with the letter or policy of these statutes.

Upon the whole, we are of opinion, under such a mortgage as that in this case, that the mortgagor can maintain ejectment against a stranger who rests his defence entirely on possession and an outstanding title in the mortgagee. The time is sufficiently determinate and fixed to make the duration of the demise certain, and the covenant to hold and enjoy, is sufficiently affirmative to bring it within the principle of the cases both in England and this country.

*Judgment reversed and procedendo awarded.*