# BURSEY *v.* LYON.[*]

---

APPEAL AND ERROR; EVIDENCE; EJECTMENT; COMMON SOURCE OF TITLE;
ESTOPPEL; DEEDS.

1. Where a deed, offered in evidence by defendant in ejectment, is excluded on motion of the plaintiff, the latter cannot, on an appeal by him, rely upon it.

2. If both parties to an action of ejectment claim under a common source of title, both are estopped from disputing title in that source, and, therefore, neither will be heard to set up an outstanding title paramount to the common source, unless he can connect himself with it.

3. Where the plaintiff in ejectment establishes and relies upon a common source of title, he opens his title as derived from that source to any attack which the defendants may find available.

---

*See *Bursey* v. *Lyon,* 30 App. D. C. 597.—REPORTER.

4. The plaintiff in ejectment cannot successfully support his title to the land in controversy by a deed from a trustee under a deed of trust securing a debt and reserving to the grantor the right of possession until default in payment of the debt, where no such default is shown. (Following *Wilkes* v. *Wilkes*, 18 App. D. C. 90, and *Smith* v. *Sullivan*, 20 App. D. C. 553.)

5. The plaintiff in ejectment cannot recover when his title is derived from a tax deed which shows on its face that it was based upon a sale for taxes made in the names of certain parties, who the plaintiff's own evidence shows were not owners of the land when the sale was made. (Following *Kann* v. *King*, 25 App. D. C. 182.)

6. A deed by court trustees of the north half of a lot vests no title in the grantee, where, by the decree appointing them, they were authorized to sell the south half.

No. 1940. Submitted October 21, 1908. Decided December 22, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action in ejectment.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action of ejectment brought by appellee, Isaac S. Lyon, plaintiff below, to recover from appellant, Isaac B. Bursey, possession of an undivided one-half interest in the north half of lot 7, in square 834, in the city of Washington. It is conceded that neither the plaintiff, nor any person under whom he claims title, has ever been in possession of the property in question. For a common source, plaintiff relies upon the title of one William S. Walker, who died intestate in 1844. At the trial, plaintiff undertook not only to connect himself by an unbroken chain of title with the common source, but, for the purpose, as alleged, of establishing this common source, he offered in evidence the various transfers constituting the chain of title of defendant, beginning with a tax deed from the corporation of Washington to S. H. Platt for taxes assessed against the said William S. Walker. The following abstract discloses the chain

of title upon which plaintiff relies and defendant's title, as introduced in evidence by plaintiff to establish common source:

PLAINTIFF'S CHAIN OF TITLE FROM COMMON SOURCE (WM. S. WALKER).

Nathaniel Brady to William S. Walker.

William R. Walker
Mary Ellen Walker   } Heirs of William S. Walker who
Thomas D. Walker        died intestate, 1844.
Almea V. Davis

William R. Walker to James B. Davis.

Almea V. Davis and } to { Bartow L. Walker and
James B. Davis          John H. Walter.

John H. Walter to Bartow L. Walker.

Bartow L. Walker to Paul J. Brandt.

Paul J. Brandt to Bartow L. Walker, Trustee.

Bartow L. Walker, Trustee, to Virginia Alabama Co.

Genevieve E. Walker
vs.                          } Equity Suit
Bartow L. Walker, Paul J. Brandt,     No. 16513
and Virginia Alabama Co.

Virginia Alabama Co. to { Michael J. Colbert, John Ridout
                        { and Leo Simmons Trustees.

Commissioners D. C. to { Isaac S. Lyon, John Ridout, Michael
                       { J. Colbert, Leo Simmons.

Michael J. Colbert, John Ridout } to { Isaac S. Lyon
and Leo Simmons, Trustees,           { North half lot 7.

Isaac S. Lyon to { Michael J. Colbert,
                 { John Ridout,      } South half lot 7
                 { Leo Simmons,

DEFENDANT'S CHAIN OF TITLE FROM COMMON SOURCE (WM. S. WALKER).

Corporation of Washington to { S. H. Platt, Tax Deed sold as
                             { property of Wm. S. Walker.

District of Columbia to { Frank J. Bramhall, Tax Deed sold as
                        { property of S. H. Platt.

Enoch Totten, Trustee, to { William L. Bramhall, Conveys
                          { interest of S. H. Platt.

Frank J. Bramhall to Albert G. Hall.

Albert G. Hall to William L. Bramhall.

William L. Bramhall to Nathan B. Clarke and Wm. B. Todd.

William B. Todd to Nellie M. Simmons.

Nellie M. Simmons to Isaac B. Bursey, Defendant.

Defendant, being in possession, could not be compelled to disclose his title until plaintiff had established his legal title by an

unimpeachable chain from the common source. Any weakness or defects in defendant's title could not be used by plaintiff to cure defects that might be found to exist in his. In fact, plaintiff disclaims any such motive in introducing in evidence the title of defendant, but only asks its consideration for the purpose of establishing the common source.

In the trial, when plaintiff rested his case, counsel for defendant moved the court to instruct the jury to return a verdict for defendant on the grounds, "that plaintiff has failed to deraign title from the sovereignty to himself, to prove common source of title with defendant, or prior possession, or sufficient title from the common source with the right of possession, or to prove any title in himself with the right of possession sufficient to maintain the action of ejectment." The court overruled this motion. Defendant then offered in evidence a certified copy, from the land records of the District of Columbia, of a deed dated December 27, 1894, from Paul J. Brandt to Bartow L. Walker, purporting to convey the property in question in fee simple, and reciting, among other things, as follows: "The following described land and premises situate, lying, and being in the District of Columbia, and distinguished as original lot numbered seven (7) in square numbered eight hundred and thirty-four (834) and lot numbered fifteen (15) in square numbered one thousand and thirty-four (1034). The above conveyance being given to correct an error in a conveyance dated November 1st, 1894, and recorded December 11th, 1894, conveying certain real estate in the District of Columbia from the said Walker to the said Brandt when it was not the intention of the said Walker to convey the above described real estate." Counsel for plaintiff objected to the introduction of this deed in evidence, on the ground that the grantee, Brandt, had exhausted his title by a trust deed conveyance to Walker, trustee, on November 1, 1894, who, in turn, conveyed the title so acquired to the Virginia-Alabama Company. The court sustained this objection. Counsel for defendant then offered in evidence certain certified extracts from the land records of the District of Columbia, showing two sales of this land for taxes,

one of April 30, 1891, in which it appears to have been assessed to "Walker B. L. & others," and the other on May 1, 1893, where it appears to have been assessed to "A. T. Bramhall." Counsel for plaintiff objected to the admission of these extracts in evidence, which objection was sustained by the court. Here defendant rested his case, and counsel for plaintiff moved the court to instruct the jury to return a verdict in favor of plaintiff for the possession of the land involved in the suit, to which counsel for defendant objected. The court overruled the objection, and so instructed the jury. The court further instructed the jury that it should determine from the evidence in the case the fair rental value of the land in question from November 1, 1905, to date. Upon these instructions, the jury returned a verdict in favor of the plaintiff for the possession of the land in question and for $129 mesne profits.

*Mr. William Henry White* for the appellant.

*Mr. John Ridout* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Defendant brings the case here upon the following assignments of error:

"The trial court erred:

"1. In overruling defendant's motion to instruct the jury to return a verdict for the defendant.

"2. In instructing the jury 'that the plaintiff is entitled, as matter of law, to the possession of the property' involved herein.

"3. In admitting in evidence the release of Bartow L. Walker, trustee.

"4. In admitting in evidence the tax deed to Ridout, Colbert, and Simmons, trustees, and Lyon.

"5. In refusing to admit the reports of tax sales.

"6. In admitting in evidence the deed from Colbert, Simmons and Ridout, trustees, to Lyon, and the deed from Lyon to said trustees.

"7. In admitting in evidence the charter of the Virginia-Alabama Company, and the deeds by and to it."

Defendant, by refusing to put his title in evidence, elected to rely, not on the strength of his own title, but on the weakness of plaintiff's. While defendant assails the title of plaintiff generally, his first specific objection is made to the transfer from Bartow L. Walker to the Virginia-Alabama Company in December, 1894, fifty years after the death of William S. Walker. It appears that Bartow L. Walker, prior to this date, had conveyed the property in question to one Paul J. Brandt. Brandt executed a trust deed conveying the property to secure the payment of the sum of $25,000 to one Archibald C. Walter, and named Bartow L. Walker therein as trustee to carry out the terms of the contract as expressed in the deed of trust. It, however, appears that, by the terms of the trust deed, Brandt was to remain in possession of the property. Thereafter Walker, as trustee, executed a conveyance releasing the trust deed to the Virginia-Alabama Company, in which it is stipulated by Walker that the land in question had been discharged from the effect and operation of the trust created by the execution of the trust deed on November 1, 1894, and that the debt secured thereby had been fully paid. This conveyance from Walker to the Virginia-Alabama Company is challenged by the defendant as insufficient to convey such a legal title as will support this action. It is insisted that there is an outstanding title in Brandt sufficient to defeat plaintiff. In other words, the conveyance in question, through which plaintiff claims, forms a defective link in his chain of title, and, for that reason, he must fail. Plaintiff cannot avail himself of any effect that the conveyance in fee simple from Brandt to Walker, before the conveyance from Walker to the Virginia-Alabama Company, might have had upon the question here under consideration, for the reason that it was excluded by the court on the objection of counsel for plaintiff.

Taking the record before us, we are compelled to consider the title in question as one outstanding in Brandt, and not in Bartow L. Walker. It is a familiar rule of law that a de-

fendant in ejectment cannot avail himself of an outstanding paramount title unless he connects himself with that title. But, to bring defendant within this rule, the outstanding title must be prior and paramount to the common source. The reason for this rule is that both parties are estopped from disputing the title in the common source, hence, neither will be heard to set up an outstanding title paramount to the common source, unless he can connect himself with it. Where plaintiff establishes and relies upon a common source, he opens his chain of title deraigning from that common source to any attack which the defendant may find available. The rule is well stated in *Griffin* v. *Sheffield,* 38 Miss. 359, 77 Am. Dec. 646, where the court said: "It is admitted as a general rule, that it is competent for a defendant in ejectment to protect himself in his possession by showing an outstanding title in another, upon the principle that the plaintiff in ejectment must recover upon the strength of his own title. This rule is as ancient as the action itself, and has its origin in the just presumption that the party in possession is either the true owner, or holds under the true owner, until the contrary is made to appear."

It is, therefore, proper to consider the character of title that Walker received from Brandt, and also what, if anything, he, in turn, conveyed to the Virginia-Alabama Company. All that Walker acquired from Brandt, by being named as trustee in the deed of trust, was a naked legal title, without any beneficial interest whatever. Of course, he was entitled to his compensation for executing the trust, but that could not affect the extent of the estate conveyed to the trustee. The beneficial interest of the *cestui que trust,* the mortgagor and mortgagee, or debtor and creditor has always been held to be superior and paramount to any right conferred upon or held by the trustee. The trustee is no more than the mere agent of the mortgagor and mortgagee to carry out their contract. To this extent is his title limited, and for that purpose alone is he vested with the legal title. He acquires no beneficial interest whatever in the property conveyed. In *Georges Creek Coal & I. Co.* v. *Detmold,* 1 Md. 225, where the court had before it a conveyance containing similar

provisions to the trust deed here under consideration, the court held: In Maryland it has been held, since the cession of the territory of the District of Columbia, that, where the mortgage contained a covenant that the mortgagor should remain in possession until default, the latter might recover in ejectment, because the covenant operating by way of redemise left him the substantial owner both in equity and at law. This court announced a similar rule in *Wilkes* v. *Wilkes,* 18 App. D. C. 90, where it said: "As a general rule, it is well settled that the nature and extent of a trustee's title depend, not so much upon the terms of its grant, as upon the purposes and requirements of the trust imposed. Where these are plain and certain, they will limit and restrain the language used in creating the title of the trustee."

In the case of *Smith* v. *Sullivan,* 20 App. D. C. 553, the defendant in ejectment undertook to defend against plaintiff's prima facie right of possession by proving an outstanding legal title in certain trustees, acquired by the terms of a mortgage upon which no default had been made. In holding that the title in the trustees was not such as to prevent the recovery of possession by the plaintiff, the court, following the rule announced in *Wilkes* v. *Wilkes,* supra, said: "In accordance with this principle, it might even be held, without doing violence to any other, that the grant to the trustees, by the special limitations of the instrument, would constitute nothing more than a naked, passive trust that could be regarded as executed by the statute of uses, on behalf of the mortgagor, until such time as the trust might spring into an active and imperative one through his default." If the title in the trustee in the above case was insufficient to defeat an action of ejectment, conversely, it is not clear how a similar title in the present case can support such an action.

Here, by the terms of the deed of trust, possession remained in the mortgagor, Brandt. The deed, therefore, conveyed no right of possession to the trustee Walker. The conditions of the contract, as evidenced by the deed of trust, having been satisfied, the trust became executed by the statute of uses on behalf of Brandt. The trustee could not execute a conveyance to

the Virginia-Alabama Company that would entitle it to dispossess Brandt. It is only necessary for us to consider what right the Virginia-Alabama Company would have had to eject Brandt from possession to determine the right of plaintiff to sustain this action, for the plaintiff, claiming to derive title through this company, can rise no higher than the weakest link in the chain through which he claims. The very foundation of the action of ejectment is based upon the fact that the tenant in possession is a wrongdoer at the time the action is brought. Was Brandt such an offender against the Virginia-Alabama Company? Could that company have dispossessed Brandt on a title derived from Walker, trustee, when, by the terms of the trust, he was to remain in possession, at least, until that right was forfeited by the failure to discharge his obligation under the agreement expressed in the trust deed, a condition which never arose? To propound these questions is to answer them. The chain of title upon which plaintiff relies in this action breaks at this link, and, unless this defect is cured by some subequent conveyance, his whole case must fail.

Manifestly, the only link in the chain of title upon which plaintiff relies, to which he can now look for relief, is the tax deed from the commissioners of the District of Columbia to Ridout, Colbert, and Simmons, trustees, and Lyon. This conveyance is attacked upon the ground that it shows on its face that the lot in question was sold for taxes for the year 1890 in the name of "Walker, B. L. & others" and for the year 1892 in the name of "A. T. Bramhall." The chain of title upon which plaintiff relies shows that the title in 1890 was in Bartow L. Walker and John H. Walter, and, in 1892, in the name of Bartow L. Walker. The name of A. T. Bramhall does not appear in either chain of title offered by plaintiff to establish common source. The deed here in question is a single instrument, and must stand or fall upon the validity or invalidity of all the proceedings upon which its execution was authorized.

Lands can only be taken and sold for taxes under express statutory authority. It is in the nature of an *ex parte* proceeding, and consequently there must be a substantial compliance

with every provision of the statute. Any failure on the part of the officers charged with the execution of such a law, to observe all its commands, when enforcing it against the property of a taxpayer, will furnish a future defense to persons so deprived of vested rights. Except where modified by statute, the rule is that, when the validity of a tax title is challenged, the burden of proof is on the holder of the tax deed to show affirmatively that all the provisions of the law have been complied with. *Marx* v. *Hanthorne,* 148 U. S. 172, 37 L. ed. 410, 13 Sup. Ct. Rep. 508. The court, in the same case, discussing the effect of selling real estate in the name of a person different from that of the real owner, said: "We agree with the court below in thinking that the reasonable meaning of the statutes regulating notices and sales of property for taxes is that such notice and advertisement should give the correct names of those whose property is to be sold. While the statutes do not in terms say that the names of the owners should be published, yet such would seem to be the fair presumption, and the present case shows that such was the construction adopted by the officials, as they did name, though incorrectly, an owner in the notice." There the statute did not exact in specific terms that the proceedings should be had in the name of the owner, but here the requirement appears in explicit terms, but no attempt at compliance seems to have been made by the officers.

It is insisted that the deed is prima facie evidence of the regularity of all the proceedings leading up to its issue. Even where a statute makes a tax deed prima facie evidence of the regularity of the proceedings, it has been held that such a statute does not dispense with the performance of all the requirements of the law prescribing how land may be sold for taxes. In *Williams* v. *Kirtland,* 13 Wall. 306, 20 L. ed. 683, the court, considering the effect of such a statute, said: "The deed itself, when admitted, creates under the statute a presumption that all essential preliminary steps in the assessment and levy of the tax and sale of the property have been complied with. This presumption the defendant desired to rebut. He offered to prove that the notice of the sale was insufficient, but the offer was rejected under the

objection that the proof was incompetent and immaterial. In this the court below erred." In the present case the defendant objected to the admission of the deed in evidence as part of plaintiff's chain of title, for the reason that the deed, when considered in the light of plaintiff's evidence, upon its face revealed a fatal defect in the assessment of the taxes. Had no defect appeared upon the face of the deed, defendant could have introduced evidence to establish such defect. But, if the flaw was apparent upon the face of the instrument itself, when read in connection with the evidence upon which plaintiff relied, no additional evidence was necessary in this proceeding to lay it open to attack.

The deed recites that said lot "was duly assessed for taxation in the name of B. L. Walker and others and in the name of A. T. Bramhall for the fiscal years" ending June, 1890 and 1892. The statute under which this property was assessed reads as follows: "That all real property, except as hereinafter provided, shall be assessed in the name of the owner, trustees, or guardian thereof. All undivided real property of a deceased person may be assessed in the name of such deceased person until the same is divided according to law, or has otherwise passed into the possession of some other person. And real property, the ownership of which is unknown, shall be assessed, 'owner unknown.' " [22 Stat. at L. 568, chap. 137, § 1; D. C. Comp. Stat. 1894, p. 522, § 20.] In legislating upon this subject, Congress sanctioned an assessment against the owners of property in this District. The question here is whether that requirement is one that the taxing officers can ignore, and, as was done in this instance, in 1890, omit the name of the part owner, John H. Walter, and, in 1892, omit the name of the owner entirely, and assess the property in the name of a fictitious person, who does not appear, from this record, to have ever been connected with the title. Considering a statute similar to the one here in question, the court, in *Washington* v. *Pratt,* 8 Wheat. 681, 5 L. ed. 714, said: "It was undoubtedly in the power of Congress to have left what latitude they pleased to the assessor in designating the owner; but, if they have confined him to the necessity of determ-

mining the true owner, it is not in our power to enlarge his discretion. It may be a hardship upon the corporation, but the legislature only can decide whether that hardship shall be perpetuated or not. It must be observed that the alternative is one which would put it in the power of the assessor to designate a mere nominal owner, a kind of casual ejector, in every case. Had Congress intended to lighten the labors of the corporation or their assessor in this respect, there were very simple means of doing it; they might have sanctioned a designation with reference to the first or last vendee of record. * * * It will seldom happen that the legal estate does not, in fact, exist in the last vendee of record, or his heirs or devisees. The name of the real party in interest must have been, in the eyes of Congress, the most awakening circumstance of the advertisement required to warn him of his danger." This court has held that where, in the assessment of taxes, the taxing officers insert the name of a person as the owner, it is essential to support a valid tax sale upon such an assessment that the person so named shall be the real owner. *Kann* v. *King,* 25 App. D. C. 182. In this District, at the time here in question, by a statute in force (Abert, Comp. Stat. 519, sec. 6), it was made the duty of the recorder of deeds and the register of wills to furnish the proper taxing officers, on or about the first Monday in January and July of each year, correct lists of all transfers of real estate appearing of record for the preceding half year. Hence, Congress took double precaution to insure the assessment of real estate in the name of the owner. When the name of the owner could not be ascertained, the law specifically provided how the assessment should be made,—in the name of "Owner unknown." This left no discretion in the officers. The assessment must be either in the name of the true owner or vendee last of record, or by the designation "Owner unknown." In this case neither of the requirements of the statute were followed. We are therefore of the opinion, considering the two assessments together, as we must, that the assessments were so fatally defective as to pass no right to a conveyance to the purchaser at the tax sale, and, for this reason, the tax deed in question passed no title to his assigns, the plaintiff and his associates.

It is unnecessary to consider at length the conveyance from Ridout, Colbert, and Simmons to plaintiff, of the north half of lot 7. It is sought to find the authority of these trustees to make this conveyance in the decree of the court in a certain proceeding in equity, No. 15,513, in which the south half of the lot in question was involved, and to which Brandt, Bartow L. Walker, and the Virginia-Alabama Company were all parties. By the decree, the trustees were appointed to sell the south half of this lot, and make division of the proceeds as directed by the court. The north half of the lot, the property here under consideration, was not involved in the proceeding in equity, and no authority was given the trustees to deal with it. As we have observed, they acquired no title by the tax deed, and their authority, under the decree in equity, was limited to the sale and conveyance of the south half of lot 7. It goes without saying that their power was limited by the terms of the decree, and any attempt upon their part to convey the north half of said lot was an unauthorized assumption of power, and therefore void.

It is unnecessary to consider the other assignments of error. The judgment is reversed, with costs, and cause remanded for further proceedings not inconsistent with the views expressed in this opinion, and it is so ordered.                          *Reversed.*