## CIRCUIT COURT OF BALTIMORE CITY.

Filed January 14, 1927.

PAUL A. SEEGER, ET AL.,

VS.

EDWARD P. KEECH, ET AL.

*R. B. Tippett & Son* for plaintiffs.

*Robert F. Carman, Semmes, Bowen & Semmes, Haman, Cook, Chesnut & Markell* for defendants.

FRANK. J.—

The case presented by the bill of complaint is one for reimbursement by some of the bondholders of the Big Vein Pocahontas Coal Company as against the defendants, directors of that company, for loss alleged to have been suffered by the complainants under the circumstances set forth in the bill. The bill is a voluminous one and sets out numerous and complicated facts. Those essential to this decision may be summarized as follows:

The complainants together are the owners of $52,000 par value of class "B" bonds, secured by a mortgage deed of trust, hereinafter referred to as the mortgage. The defendants were the directors of the Pocahontas Company during the whole period of time involved herein. $234,000 of said class "B" bonds were issued. $52,000 thereof, as we have seen, are owned by the complainants. Some of the other class "B" bonds have been redeemed. Others are in the hands of persons not parties to this proceeding. The Fidelity Trust Company is the trustee under the said mortgage to secure all of these bonds. The mortgage contains a provision, being Section 11, of Article II, thereof, entitled "Particular Covenants of the Coal Company" making certain provisions for the creation of a sinking fund for the benefit of the bonds thereby secured, the pertinent portions whereof are hereinafter more fully set out. The mortgage also contains a provision designated as Article VII entitled "Immunity of Officers, Directors and Stockholders," the so-called "No Recourse Clause," usual in such mortgages, which is relied upon by the defendants as being a complete answer to the claims herein made. The correct construction of this provision is disputed and, for the purposes of this decision, I do not feel called upon to pass upon its correct interpretation.

Two contentions are made in the bill of complaint as establishing liability on the part of the defendants.

First. Section 11, of Article II, of the mortgage provides as follows:

"The coal company will create a sinking fund for the benefit of the bonds, hereby secured, by paying to the trustee on or before the first days of August and February in each year until all the bonds secured hereby are fully paid, fifteen cents upon and for each and every ton of two thousand two hundred and forty pounds of coal mined from the property covered by the lien of this indenture during the preceding six months ending, respectively, on June 30th and December 31st of each year, provided, however, that the minimum amount of such payments in respect of each and every such period of six months shall not be less than fifteen thousand dollars. On or before the date so fixed for such payments the coal company will deliver to the trustee a certificate signed by its treasurer stating the number of tons of coal mined during the period of six months in respect of which such payments are to be made * * *"

The bill alleges that the Pocahontas Company mined sufficient coal to have required the deposit of approximately $133,000 with the trustee under the mortgage, but that it actually deposited thus only $33,405, and the balance of said sum of $133,000 was diverted and misapplied to other corporate purposes. It is claimed that this alleged diversion and misappropriation was such tortious conduct on the part of the defendants as to render them liable by the complainants for the total loss suffered by them upon their bonds.

Second. It is further alleged that the said sum of $33,405 actually paid to the trustee under the mortgage was distributed in the redemption of outstanding class "B" bonds (among said bonds so redeemed during said time being nineteen bonds belonging to the defendant, James L. Sellman) said distribution and said redemption of said bonds not being in accordance with the terms of the mortgage, but in violation of defendants' plain duty to pro rate said sum of money among all of the holders of class "B" bonds according to their respective holdings, thereby giving a preference to some of the holders of class "B" bonds over the others. This action of the directors is likewise claimed to render them responsible to the complainants for their said loss.

Taking these contentions in the order above stated:

First. The rule is well settled that where a mortgage contains the customary clause entitling the mortgagor to possession of the mortgaged premises until default, the latter is lawfully in possession under a re-demise thereof. George's Creek Co. vs. Detmold, 1 Md.

225, 237. As long as the mortgagor remains in possession, even after default, he is entitled to the rents and profits; he may lease, sell and in every respect deal with the mortgaged premises as owner thereof. The rents and profits are not regarded as pledged, so long as the mortgagor is entitled to possession. Chelton vs. Brooks, 65 Md. 272, 277. The mortgagor contracts to pay interest and not rent. Homer vs. Ref. & Heat. Co., 117 Md. 411, 424.

This rule prevails even where, as in the mortgage in this case, all incomes, rents, issues and profits of the mortgaged property are covered by the mortgage lien.

Parkhurst vs. N. C. R. R. Co., 19 Md. 472, 479.

The mortgagee does not become entitled to the rents and profits of the mortgaged premises, until he has done at least one of three things: (a) until he takes possession, or (b) until possession is taken on his behalf by a receiver, or (c) until in proper form he demands, and is refused, possession.

Brown vs. Whiteside, 89 Md. 448, 461.

Griffith vs. Dale, 109 Md. 697, 703.

Baker vs. Hill, 100 Md. 130.

Baker vs. Baker, 108 Md. 269.

Owens vs. Graetzel, 149 Md. 689, 693.

It is not allleged that any one of these methods of procedure was followed by the trustee under the mortgage, by the bondholders or by any one in their behalf. It is clear, therefore, that the Big Vein Pocahontas Company had the legal right to use its income for any lawful corporate purpose during the entire time during which it was claimed that the alleged unlawful diversion was taking place, unless, under some express provision of the mortgage an inhibiting obligation was imposed upon it.

This obligation, it is claimed, is created by the provisions of Section 11, of Article II, of the mortgage above recited. It will be noted that the sum of fifteen cents for each ton of coal mined, stipulated to be paid into the sinking fund, is not expressed to be payable out of the proceeds of the sale of the coal. It is to be paid for each ton mined, whether sold or not. If not a ton of coal were mined, the company was still obligated to pay thirty thousand dollars annually out of its other resources. It is made a charge neither on the coal nor on the proceeds. It is merely stated to be a payment of money, the amount of which is to be measured in terms of tons of coal mined. It would have been perfectly competent for the parties specifically to have charged the coal as mined or the proceeds of its sale with the payment of this sum. They did not even designate such proceeds as the source from which it was to be paid. The covenants of the mortgage called for the payment of the entire debt in accordance with its terms. The sinking fund provision requires merely the prepayment in installments of portions of such entire indebtedness. A failure to comply with this provision was a breach of the covenant, just as was the non-compliance with any other covenant of the mortgage, but it cannot be held that the mere breach of the covenants of the mortgage, without any diversion of the corporation's funds to non-corporate purposes, can render the directors personally liable.

The case made out by the bill is, therefore, clearly distinguishable from Basshor Co. vs. Carrington, 104 Md. 606, so earnestly relied on by complainants. In that case specific stocks and bonds were deposited with a committee to be used for certain specified corporate purposes. They were actually used for other than the purposes designated, in certain cases to pay the individual debts of a member of the committee. Clearly here a trust was created as to the specific property placed in the hands of the committee and the disposition of the property in violation of the terms of the trust was properly held to render the members of the committee personally liable. The other cases cited by complainants determining the relative rights of claim-ants to monies stipulated to be paid into the sinking fund are similarly not in point. In most of them the amount in dispute was actually in the sinking fund.

I am of the opinion that the sinking fund provision, above discussed, did not have the effect of entitling the mortgagee to the income and profits of the mortgaged property during the period in which the funds in question were being diverted to other corporate purposes; that such diversion, although a violation of the terms of the Sinking

Fund provision, was clearly within the lawful powers of the corporation and that no responsibility therefor can arise on the part of the defendant directors.

Second. Clause 11 of Article II aforesaid requires the payments for the account of the sinking fund to be made to the trustee under the mortgage. As already stated, the bill alleges the distribution of $33,405 by these defendants in redemption of certain of the outstanding bonds. Under the terms of the mortgage the payments were to be made to, and distribution made by, said trustee. The trustee represents all outstanding bondholders, including not only the complainants, but various other bondholders. It is, therefore, a necessary party to this proceeding as to said relief. This must be so, because only a pro rata distribution among all outstanding bondholders is claimed to be proper and that cannot be effectually made unless all of the bondholders, or at least the trustee representing them, are or is before the Court. The alleged insolvency at the time of said distribution would not of itself make the preference charged an illegal one. Preferences, independent of statute, are entirely valid at law and in equity, unless fraudulent. Fraud is nowhere charged in the bill. Such preference might possibly have been, or possibly still might be, avoided in bankruptcy, but such relief cannot be afforded in this proceeding.

It is charged, moreover, that nineteen of the bonds so redeemed belong to one of the defendants herein, a director of the Pocahontas Company, and that the directors at the time of said redemption knew that the company was insolvent. If it should be claimed that Sellman, with the knowledge derived from his fiduciary position as director, took advantage of the information so acquired to pay himself off at the expense of the other creditors of the company, such a situation properly averred might state a good cause for relief.

Booth vs. Robinson, 55 Md. 419 at 436.

For want of necessary parties this question is not properly presented by the present bill of complaint. Moreover, to join, as the present bill of complaint does, all of the other directors in a proceeding properly to be

directed only against Sellman, would render the bill fatally multifarious.

Although the property conveyed by said mortgage lies in the Commonwealth of Virginia, it is not alleged or suggested that there is any difference between the laws of that Commonwealth and of this State in respect to the questions involved herein. My rulings are based on what I understand to be the law of Maryland.

The views herein expressed at some length render it unnecessary to discuss the other questions so ably argued at the hearing.

The demurrer to the bill of complaint will be sustained, with leave to the complainants to amend within thirty days.