(Decided March 14th, 1899).

---

## SAMUEL B. RICHARDSON and VIRGINIA RICHARDSON *vs.* THE BALTIMORE AND DELAWARE BAY RAILROAD COMPANY.

*Mortgages—Right of Mortgagee in Possession After Default to Remedies of an Owner Against Third Parties—Covenant of Re-demise to Mortgagor—Ejectment—Construction of Mortgage.*

A mortgagor, before foreclosure, is regarded as the real owner of the property, and even after default in payment or breach of condition, when the continued possession of the premises by the mortgagor is with the assent, express or implied, of the mortgagee, he is entitled to the remedies of an owner as respects any interference with the property by third parties.

When a mortgage contains a covenant that until default the mortgagor shall possess the premises, such a covenant is a re-demise and the mortgagor is entitled to maintain ejectment against a third party. This right of the mortgagor to retain title and possession may be continued after default by agreement of the parties.

Defendant was in possession of certain land which was the property of plaintiff, a Railway Company. This land, together with other property of the plaintiff, had been mortgaged to secure the payment of certain bonds. Defendant's possession was without the authority of either the mortgagor or the mortgagee. In an action of ejectment,

defendant relied upon the fact that there had been a default in the payment of interest under the mortgage to defeat the right of the plaintiff to maintain the action. *Held,* that inasmuch as there was a covenant in the mortgage which amounted to a re-demise of the premises for the period the bonds were to run, subject to be forfeited by default, and as the default for non-payment of interest contemplated by the terms of the mortgage that would defeat the right of possession of the mortgagor was only such as continued after demand in writing for payment, and as there had been no such demand and hence no such default, the mortgagor still has the right of possession and the legal title under the re-demise and can maintain an action of ejectment against defendant relying solely on the mortgage for his defence.

A mortgage of its property by a Railway Company to trustees to secure the payment of principal and interest of certain bonds according to their terms, provided that until default in payment the company should possess the property. It was also provided that if default in payment of interest should continue for ninety days after demand in writing, the trustees could declare all the principal due ; also that in case of default of payment and demand in writing, the trustees could, such default continuing, proceed to foreclose, or such default continuing for ninety days after demand in writing, the trustees might enter upon the property, &c. *Held,*

1st. That all the clauses of the mortgage relating to default in payment of principal or interest must be construed together, and upon such construction it is clear that the parties did not intend that the right of possession by the mortgagor should be forfeited as soon as there was any default in payment of interest.

2nd. That the re-demise of the property to the mortgagor is not forfeited under these circumstances, by the mere failure to pay interest when due, but the right of the trustees to enter and foreclose does not arise until the default has continued for ninety days after demand.

3rd. That although there has been a default in payment of interest the mortgagor is entitled to maintain ejectment against a third party for property covered by the mortgage.

Appeal from the Circuit Court for Kent County (STUMP and MARTIN, JJ.)

The cause was submitted to the Court on briefs by:

*Harrison W. Vickers* and *Lewin W. Wickes,* for the appellants.

*William M. Slay,* for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee recovered a judgment against the appellants in an action of ejectment for the land described in the declaration and nominal damages. At the trial the defendant offered in evidence a mortgage from the plaintiff to J. Rogers Maxwell, and Robert W. de Forrest, trustees, "for the purpose of showing that the plaintiff had not such a title to the property in controversy as to entitle it to sustain the action of ejectment," and the Court, upon objection, refused to admit it. As the only exception taken was to that ruling of the Court, the question before us is whether the mortgage, in connection with the admitted facts, was sufficient to defeat a recovery by the plaintiff.

It is admitted that the mortgage embraces the property in controversy ; that prior to the institution of the suit "default was made in the condition of said mortgage providing for the payment of interest," and that the plaintiff was, with the assent of the mortgagees, in possession of all the mortgaged property (excepting that sued for in this case, which was in the possession of the defendants without any authority from or consent of the mortgagees) and in the entire management and control of the same from the date of the mortgage to the time of trial, as fully since, as before the default in the payment of the interest was made. There are provisions in the mortgage, which we will have occasion to refer to, which the plaintiff relies on, and it is admitted that no notice was ever given to the plaintiff by the mortgagees as required, according to the contention of the plaintiff, by the terms of those provisions.

In this State it is well settled that in actions of ejectment the plaintiff must show that he has a *legal* title and the right of possession in the land. But when he has proven a title which is *prima facie* good, the burden is then cast on the defendant, and if he undertakes to set up an outstanding title in a third person, he is required to establish the existence of it with clearness and precision and generally such an one as would enable the stranger to recover in ejectment against

either of the parties to the suit.  *Lannay's Lessee* v. *Wilson*, 30 Md. 546.  That is attempted in this case by the offer of the mortgage referred to and the admission that there had been a default in the payment of interest.  The effect of a mortgage is to vest the legal title in the mortgagee and when there is no provision to the contrary the right of possession follows as a consequence ; (*Jamieson* v. *Bruce*, 6 G. & J. 72), and hence our predecessors decided as early as *Beall* v. *Harwood*, 2 H. & J. 167, that a mortgage of that character prevented recovery in ejectment by the mortgagor unless he proved that the mortgage was satisfied prior to the bringing of the suit and that is still the law of this State. *Berry* v. *Derwart*, 55 Md. 73.  But in the case of *Georges Creek Coal and Iron Company* v. *Detmold*, 1 Md. 225, it was held, after reviewing a number of cases, that there was no decision in this State which could be construed as denying the right of the mortgagor to maintain ejectment against a third party, before default, where the mortgage contains an affirmative covenant that the mortgagor shall possess and enjoy the premises until default, and that doctrine has been recognized as the law of this State since that decision and is not denied by the appellants. Here, however, as we have seen, it is admitted that there had been default in the payment of interest before the suit was brought and hence we are confronted with a state of facts that did not exist in the *Detmold case.*  After default the mortgagee usually has the same right of entry as he would have had if there had been no covenant that the mortgagor should remain in possession until default, but that may depend upon other provisions in the mortgage.  The covenant is in effect a re-demise of the premises from the mortgagee to the mortgagor, and hence the legal title and the right of possession are vested in the mortgagor—even to the exclusion of the mortgagee until condition broken, although of course the mortgagee can prevent the security from being impaired by waste, destruction or other improper appropriation of the property which would have that effect.  In short, the mortgagor, when there

is such a covenant, is regarded, both at law and in equity, as
the substantial owner of the property ; (*Chelton* v. *Green*, 65
Md. 276), and if there be a re-demise of the property by
which the legal title and right to possession are vested in the
mortgagor until default, can there be any reason why those
rights cannot be continued even after default by agreement
of the parties ?    We know of none and we must therefore
examine the provisions of this mortgage.

It was covenanted and agreed between the parties that
the rights, franchises and property were conveyed upon the
trusts, uses, purposes, conditions and covenants which are
set out in six clauses in the mortgage.    The "First" pro-
vided that the railroad company should pay the bonds,
principal and interest, according to the terms thereof, etc.,
and that until default should be made in the payment of the
principal or interest, or in respect to something therein re-
quired to be done, the " company and its successors and
assigns shall be permitted, except as herein otherwise spe-
cially provided, to possess, manage, operate and enjoy the
railroads, equipments and other property, rights and fran-
chises hereby conveyed, or intended so to be, and to receive
and use the tools, income, rents, revenues, issues and profits
thereof."    The " Second " provided that if default be made
in the payment of any interest on any of the bonds and
" such default shall continue for ninety days after payment
shall have been duly demanded in writing, the trustees, or,
under certain conditions therein named, a majority in interest
of the holders of the bonds, could declare all the principal
due."    The " Third " is that if default be made in the pay-
ment of any of the principal or interest on the bonds, or in
the performance of any other covenant therein contained,
" it shall be lawful for the trustees at any time after payment
or performance shall have been duly demanded in writing,
*such default continuing*, to proceed to enforce the rights or
the trustees and of the bondholders, under this mortgage,
by foreclosure or by any other appropriate proceedings,"
etc.    The " Fourth " provides that if default be made in the

payment of any principal or interest, " and such default shall continue for ninety days after payment shall have been duly demanded in writing, it shall be lawful for the trustees, *such default continuing*," to enter into and upon all the property, franchises, rights and privileges conveyed and to exclude the company therefrom.    It authorizes the trustees in the event of such continuing default to take charge of the property, run the railroad, etc., and to apply the net profits to the payment of the interest in arrears, or which shall after such entry become due and payable on the bonds outstanding, and then has a provision that whenever after entry as aforesaid the net income is sufficient to pay all the interest in arrears, " the trustees shall upon requisition in writing of the railroad company restore said property to the railroad company to possess, manage, operate and enjoy the same in like manner as before said entry."    By the " Fifth " it is provided that if default be made in the payment of any principal or interest, and " such default shall continue for ninety days after payment shall have deen duly demanded in writing," it shall be the duty of the trustees upon demand of one-eighth in interest of the holders of the bonds to proceed forthwith to enforce the rights of the trustees and of the bondholders by foreclosure or any other appropriate proceedings, and the " Sixth " has provisions to the same effect in case of default in the performance of any covenant other than the payment of money.

If the " First" clause stood alone, there could be no question about the right of the mortgagees to enter after default and that being admitted to have taken place, the mortgagor could not maintain an action of ejectment.    But all the clauses must be considered together and when that is done it seems clear that the parties to that instrument never intended that the right of possession should be absolutely forfeited by the mortgagor, as soon as there was any kind of default.    In order to place that construction upon the mortgage, the clauses succeeding the first must be ignored—although they were inserted for the express purpose

of defining the rights of the parties in case there was default. Under the terms of the " Fourth " clause, if the trustees entered (which they could only do, as we have seen, in the event of the default continuing ninety days after payment was demanded in writing) and the net income was sufficient to pay all the interest in arrears, they were required, upon demand in writing of the company, to restore the property to it " to possess, manage, operate and enjoy the same in like manner as before said entry." If such entry had been made, the interest afterwards paid and possession restored to the company, it would hold the property just as if no default had been made.

When it is conceded, as it must be, that the mortgagor had the right of possession and such legal title before default as would enable it to maintain an action of ejectment, against a party relying merely on this mortgage for defence, it seems clear to us that under the terms of the mortgage a mere default in the payment of interest does not take away that right. The agreement is not that such right of possession shall continue only until such time as the interest is not paid when due, but the right to enter is not vested in the trustees until that default has continued for ninety days after demand, and the kind of default that authorizes the trustees to proceed in any of the methods provided for is *the continuing default after demand.*

It is said, however, on behalf of the appellants, that when there is any uncertainty as to time, the covenant for possession by the mortgagor will not be construed to be a re-demise, because it must give him the right to hold the property for a " determinate time," and for this they rely on *Detmold's case* and the English cases there approved of. But the time in this case is as definite and certain as in the *Detmold case* —the re-demise is until the maturity of the mortgage, but the right to hold during that time is liable to be defeated by such default as is provided for in the mortgage. In the *Detmold case* the bonds matured on the first of January, 1861, the interest being payable every six months, and it

is evident that the Court considered that the re-demise covered the period from the execution of the mortgage until that date, as will be seen from the opinion of the Court in passing on the right of the mortgagor to make leases. In this record the whole mortgage is not set out and it is not shown when the bonds were to mature, but the only default mentioned in the agreement is the failure to pay interest and we do not understand that it is claimed that the time fixed for the maturity of the bonds had arrived. The re-demise was for that period, whatever it is, and hence was for a certain, determinate time. That being so, the question is, whether there has been *such default* under the terms of this mortgage as forfeits the right of possession by the mortgagor, which was secured to it by the covenant, which amounted to a re-demise, and from what we have already said it will appear that we do not think there has been, because the parties themselves have agreed upon the terms which would authorize the trustees to declare a forfeiture by reason of the non-payment of interest. Until the trustees make the demand, they have agreed shall be made before they can proceed, there is no such default as authorizes them to enter or take other proceedings against the mortgaged property.

This case differs widely from those cited by the appellants, which held that the covenants referred to in them did not amount to a re-demise. For, as we have seen, there was in this case a covenant which did amount to a re-demise, and the only question is whether that has been forfeited by the failure to pay interest when due, which we think must be answered in the negative, owing to the explicit agreement of the parties contained in the clauses in the mortgage which we have referred to. As was said in *Jamieson* v. *Bruce*, 6 G. & J. 72, after announcing the general doctrine that upon the execution of a mortgage the legal estate vests in the mortgagee and the right of possession follows it, " the right of possession is always subject to any agreements which may be made in relation thereto," and the same case recognized the principle, which was followed in *Chelton* v. *Green*, 65 Md. 272, that the mortgagee had no

134    RICHARDSON vs. B. & D. B. R. CO.

Opinion of the Court.                                    [89

right of entry—not only when there is an express cove-
nant that the mortgagor shall retain possession, but when
"by a fair inference or necessary implication from the
instrument, the conclusion can be drawn that the mort-
gagor was quietly to enjoy the mortgaged property."
In *15 Ency. of Law, 809*, it is said the mortgagor
"may retain possession and is entitled to all the reme-
dies of owner as respects any injury to the premises
or interference with his possession, before condition broken;
and afterwards when the assent either express or implied
of the mortgagee to his retention of the premises exists."
Of course we are aware of the fact that this Court
and its predecessors have followed more strictly the com-
mon law doctrine as to the rights of mortgagor and mort-
gagee than many Courts have, and some of the cases cited
in the notes to the *Ency. of Law* above referred to, may
not be wholly in harmony with the decisions of this Court,
but we have no hesitation in adopting the doctrine announced
in the text of that book, quoted above, that even after con-
dition broken the mortgagor may remain in possession
with the assent of the mortgagee, either express or implied,
and may under such circumstances as those before us exer-
cise the remedies of owner as respects any injury to the
premises or interference with his possession.   It is clear
that these trustees have not the right of possession under
the terms of the mortgage, and hence they could not main-
tain an action of ejectment, and if the contention of the
appellants is correct that the appellee can not, then any
trespasser can take possession of the property with impu-
nity.   It was never contemplated by the parties to this
mortgage that such results should follow its execution for
a mere default in payment of interest.

Our conclusion, therefore, is that inasmuch as there was
a covenant in this mortgage which amounted to a re-demise
of the premises for the period the bonds were to run, sub-
ject to be forfeited by default, and as the default for non-
payment of interest contemplated by the terms of the mort-
gage that could defeat the right of possession of the mort-

gagor is only such as continued after demand in writing for the payment, and there has been no such demand, and hence no such default, the mortgagor still has the right of posses- ·sion and the legal title under that re-demise and is entitled to maintain an action of ejectment against those relying sim- ply on the mortgage for their defence.    This, we believe to be not only not in conflict with the decisions in this State, but in accordance with the intention of the parties and any other conclusion would result in great injustice to the mort- gagor and not wholly in accord with that just doctrine which originated in equity but has been gradually adopted by Courts of Law, that a mortgage is a mere security for the debt and only a chattel interest, and " except as against the mortgagee, the mortgagor, while in possession and before foreclosure, is regarded as the real owner," which is recog- nized in *Duval* v. *Becker*, 81 Md. 546.    The judgment will be affirmed.

> *Judgment affirmed, the appellants to*
> *pay costs.*

(Decided March 14th, 1899.)