650 A.2d 1365

**DARNESTOWN VALLEY–WHM LIMITED PARTNERSHIP**

v.

**McDONALD'S CORPORATION.**

No. 214, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Dec. 29, 1994.

578

Robert W. Keene, Jr. (James J. Cromwell and Miles & Stockbridge, P.C., on the brief), Rockville, for appellant.

Richard A. Kramer (Russel A. Arlotta and Kramer, Gorney & Suss, Chartered, on the brief), Oxon Hill, for appellee.

Argued before WILNER, C.J., BLOOM, J., and MARVIN H. SMITH, Associate Judge of the Court of Appeals (retired), Specially Assigned.

BLOOM, Judge.

Appellant, Darnestown Valley–WHM Limited Partnership (Darnestown), which manages the Quince Orchard Shopping Center located in Gaithersburg, Maryland, leased premises in the shopping center to appellee, McDonald's Corporation (McDonald's). In September 1992, appellant initiated a summary ejectment action in the District Court for Montgomery County, seeking to evict appellee for an alleged breach of its lease. Appellee demanded a jury trial, and the case was transferred to the Circuit Court for Montgomery County. On 12 May 1993, the court (Harrington, J.) denied appellee's Motion for Summary Judgment or in the Alternative Motion to Dismiss. Subsequently, appellant's Motion for Summary Judgment and appellee's Motion to Dismiss were presented to a different judge, who denied appellant's motion and granted appellee's motion. In its appeal from that Order, appellant presents the following issues for our consideration:

I. Whether a landlord has sufficient legal title, possession and authority to institute and maintain a summary ejectment action against a tenant for breach of lease, where the fully performing Deed of Trust, to which the tenant is not a party, requires the mortgagee's approval to terminate a lease and such approval was not obtained at the time suit was filed, but was obtained and filed prior to trial.

II. Whether a landlord is entitled to summary judgment for breach of lease where it is undisputed that the tenant knowingly and wilfully breached its lease by expanding its use of the leased property without the consent of the landlord, in violation of a zoning ordinance and then knowingly and wilfully failed to cure said violation upon notice of default from landlord within the contractual cure period even after the Tenant was found to be in violation of the zoning ordinance by the Montgomery County Board of Appeals.

Appellee filed a cross-appeal presenting the following additional issue for our consideration:

Did the Circuit Court err in its May 12, 1993 Order denying McDonald's Motion to Dismiss where:

(i) Darnestown's cause of action was premature and not ripe for adjudication?

(ii) Darnestown, as the purported landlord, had not established a *prima facie* case for breach of lease under Section 8–402.1?

(iii) Darnestown was precluded from terminating the Lease under the doctrines of waiver and/or estoppel?

## FACTS

In February 1976, McDonald's entered into an agreement with Quince Orchard Associates, Inc., to lease premises located in the Quince Orchard Shopping Center for the operation of a restaurant. In March 1984, appellant purchased the shopping center property from Quince Orchard Associates, Inc., and thus became appellee's landlord. In September 1986, appellant executed a Deed of Trust conveying the shopping center property to Richard Lawson and Wendy Sharp as trustees for Perpetual Savings Bank, F.S.B. (collectively referred to as "Perpetual") as security for a $7,800,000 debt owed by appellant to Perpetual. Contained within the Deed of Trust was a provision (Paragraph 37) assigning all of the shopping center leases to Perpetual, with a covenant by appellant that it would not terminate any of the leases without the prior written consent of Perpetual. Appellant was permitted to continue to operate the shopping center and, pursuant to the provisions of the assignment of the leases, it also continued to collect the rents, being designated as a trustee for Perpetual for that purpose. Perpetual became insolvent, and the Resolution Trust Corporation (RTC) succeeded Perpetual as holder of the deed of trust note secured by the deed of trust with assignment of leases.

In 1985, appellant and appellee began negotiating a modification of the lease that would allow appellee to expand its use of the leased premises. Appellee asserts that it merely wanted to install an outdoor children's playground on the property

that it was leasing and that it only needed a fence permit from the Montgomery County Department of Environmental Protection to comply with the county's zoning requirements. Appellant asserts that appellee planned to install additional patron seating, which would increase the number of parking spaces required to be available to restaurant patrons and thus would require a special exception to county zoning regulations. Although the parties never reached an agreement, appellee was granted a fence permit by the Department of Environmental Protection and proceeded with its construction plans.

When appellant discovered that appellee had constructed improvements on the property, it sent appellee a letter requesting proof that the improvements complied with county zoning regulations. After a hearing before the Montgomery County Board of Appeals, which appellant contends established that appellee violated zoning regulations, appellant notified appellee on 7 August 1992 that, because the improvements to the leased premises made by appellee violated county zoning regulations, appellee was in violation of Paragraph 12 of its lease agreement.

Under the lease agreement, appellee had thirty days in which to cure the alleged breach. When appellee failed to cure in that time, appellant undertook to terminate the lease; on 30 September 1992, it initiated a summary ejectment action in the district court, pursuant to Maryland Code (1974, 1988 Repl.Vol.), § 8–402.1 of the Real Property Article, to repossess the premises. At the time that action was filed, appellant had not obtained RTC's written consent to terminate appellee's lease. Upon appellee's demand for a jury trial, the case was transferred to the circuit court and scheduled for trial on 25 May 1993.

On 12 May 1993, the court denied appellee's Motion for Summary Judgment or in the Alternative Motion to Dismiss. On the day of trial, the presiding judge heard oral arguments on appellee's Motion to Dismiss and appellant's Motion for Summary Judgment. The court then dismissed the jury and directed appellant either to join RTC as a required party or to

obtain its written consent to terminate appellee's lease. Although appellant obtained RTC's written consent to terminate appellee's lease on 25 June 1993, appellee once again filed its Motion to Dismiss, and appellant supplemented its Motion for Summary Judgment, which was still under advisement. On 4 January 1994, the court denied appellant's Motion for Summary Judgment and granted appellee's Motion to Dismiss.

## I.

Appellant contends that the circuit court erred in granting appellee's Motion to Dismiss because appellant was "vested with sufficient title, authority, and possession to maintain a possessory action against McDonald's for breach of lease." According to appellant, the Deed of Trust should be interpreted as a mortgage, since it was granted to Perpetual only as security for the debt owed to it by appellant. Appellant argues that, if it is treated as mortgagor, the language of Paragraph 37 of the Deed of Trust acts as a redemise of the property to appellant, thus making appellant the beneficial owner of the mortgaged property as to all persons except the mortgagee. Consequently, appellant contends, it could maintain an ejectment action against appellee.

Under Maryland Code (1974, 1988 Repl.Vol.), § 8–402.1 of the Real Property Article,

> if the tenant breaches the lease . . . and the landlord desires to repossess the premises, and if the tenant or person in actual possession refuses to comply, the landlord may make complaint in writing to the District Court of the county where the premises is located.

To qualify as appellee's "landlord," thus enabling it to maintain an action under this statute, appellant must establish that it has sufficient legal title and right of possession to the property under the Deed of Trust. Appellant must then demonstrate that its legal title and possessory rights were not eliminated when it assigned all of the leases associated with the property to Perpetual.

## A. *Deed of Trust*

■ Initially, we must determine whether the Deed of Trust granted to Perpetual by appellant operates as a mortgage under Maryland law. Maryland Code (1974, 1988 Repl. Vol.), § 7–101(a) of the Real Property Article (R.P.) provides, in pertinent part:

> Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage.

The term " 'Deed' includes any ... deed of trust ... pertaining to land or property or any interest therein or appurtenant thereto, including an interest in rents and profits from rents." Maryland Code (1974, 1988 Repl.Vol., 1993 Cum.Supp.), R.P. § 1–101(c). Thus, if a deed of trust transferring property is shown, under all the facts and circumstances, to have been intended merely as security for a debt, the court will go beyond the form and treat it as a mortgage conveying a security interest in the property. *Bailey v. Poe*, 142 Md. 57, 69, 120 A. 242 (1923) (citations omitted); *see also In re Bethesda Air Rights Ltd. Partnership*, 117 B.R. 202, 206 (Bankr.D.Md.1990) (interpreting Maryland law).

In the case *sub judice*, the language of the Deed of Trust clearly demonstrates that it was intended to secure appellant's debt to Perpetual, and was not meant to be an absolute conveyance of the property. This is illustrated by the language of the following clauses:

> WHEREAS, [appellant] is justly indebted to [Perpetual] (hereinafter referred to as the "Lender") in the principal sum of SEVEN MILLION EIGHT HUNDRED THOUSAND DOLLARS ($7,800,000), or so much thereof as shall have been advanced and remain unpaid, which indebtedness is evidenced by a Deed of Trust Note of even date herewith (hereinafter referred to as the "Note") bearing interest from date on outstanding balances at the rate or rates set forth in the Note, interest and principal being payable as provided in the Note (*said Note, which is identified as*

*being secured hereby* by a certificate thereon, is incorporated herein by reference and made a part hereof); and WHEREAS, [appellant] wishes to *secure* the full and punctual payment of the Note and the indebtedness evidenced thereby, and interest thereon, and the full performance of all the provisions, conditions, covenants and agreements herein contained, and also to *secure* the reimbursement to the Lender and the Trustee for any and all money which may be advanced as herein provided for, and for any and all costs and expenses herein provided for or which may arise in respect of this Deed of Trust *or the indebtedness hereby secured* or the Property herein mentioned; ....

(Emphasis added.)

■ The actual purpose of the Deed is further evidenced by the habendum clause, which provides that once appellant paid off "the principal of and interest on the Note and all other indebtedness which this Deed of Trust by its terms secures ..., then [the Deed] shall be null and void and of no further force and effect and shall be released...." Because it is apparent from its language that the Deed of Trust was granted to secure the loan that Perpetual made to appellant and was not intended to act as a conveyance of the property, it is deemed to be a mortgage under Maryland Code (1974, 1988 Repl.Vol.), R.P. § 7–101(a).

In Maryland, "where property is conveyed by mortgage to secure the payment of a debt, ... the debt is the principal incident of the transaction, and ... the conveyance is no more than security for its payment, and accessory and appurtenant to it." *Mizen v. Thomas,* 156 Md. 313, 318, 144 A. 479 (1929) (citations omitted); *see also Williams v. Safe Deposit & Trust Co.,* 167 Md. 499, 503, 175 A. 331 (1934).

Accordingly, there is usually incorporated in a mortgage of a leasehold estate ... a provision whereby the mortgagors, their personal representatives and assigns, may continue to hold and possess the mortgaged premises, and to receive the rents and profits thereof, upon paying in the meantime the ground rent, and all taxes levied or assessed

on the mortgaged property, with a covenant on the part of the mortgagors, their personal representatives and assigns, to pay the ground rent and taxes. The effect of this agreement on the part of the mortgagee, which is known as a redemise is to make of the mortgagor, in most respects, a tenant to the mortgagee.

Through the right of possession until default under the mortgage, and the equity of redemption, the mortgagor is now regarded as the real and beneficial owner of the mortgaged premises as to all persons except the mortgagee and those claiming under him....

*Williams,* 167 Md. at 503–504, 175 A. 331 (citations omitted). Although *Williams* involved a mortgage of a leasehold estate, the rule that permission by the mortgagee for the mortgagor to remain in possession until default constitutes a redemise to the mortgagor applies as well to mortgages of fee simple estates. *See Richardson v. Baltimore and Delaware Bay R.R. Co.,* 89 Md. 126, 129, 42 A. 938 (1899).

Thus, although a mortgage technically conveys legal title to the property to the mortgagee, such title is not absolute, being merely for security for payment. *Id.* A mortgage provision granting the mortgagor the right to continue to possess the property and to collect rents and profits, while paying the taxes and assessments on it, acts as a redemise of the property to the mortgagor until the mortgagor is in default. *Id.*

In the case *sub judice,* the Deed of Trust executed by appellant granted the property to Perpetual. Although it did not explicitly so state, the Deed of Trust by its language demonstrates that appellant was intended to remain in possession of the property. Paragraph 16 of the Deed of Trust provides that, if appellant defaults under the Deed of Trust Note or the Deed of Trust and fails to cure the default within the specified time, Perpetual "may enter upon and take possession of the Property ... and may *remove* [appellant]." (Emphasis added.) Paragraph 8.2 states that appellant cannot permit or commit waste of the property, that appellant must

keep the property in good repair, and that appellant is expected to "manage and maintain the Property in a manner to insure maximum rentals." Paragraph 37 states that appellant "shall collect and receive all rents and revenues of the Property as Trustee for the benefit of the Lender. . . ." Appellant also was required to pay all taxes and assessments on the property and to maintain insurance on the property at its expense. It is obvious from these provisions and the fact that appellant did continue to possess and manage the property after executing the Deed of Trust that both grantor and grantee intended that appellant would possess and maintain beneficial ownership of the property after executing the Deed of Trust. Accordingly, we hold that Perpetual redemised the property to appellant.

 When the mortgage provides for a redemise of the property, the mortgagor "is regarded, both at law and in equity, as the substantial owner of the property. . . ." *Richardson*, 89 Md. at 130, 42 A. 938 (citing *Chelton v. Green*, 65 Md. 276, 4 A. 271 (1886)). In effect, the mortgagor is regarded as the real and beneficial owner of the redemised premises as to all persons except the mortgagee. *Williams*, 167 Md. at 504, 175 A. 331. If the mortgage contains an affirmative covenant "that the mortgagor shall possess and enjoy [the mortgaged property] until default," these ownership rights are divested only if the mortgagor defaults in its performance of the mortgage covenants. *George's Creek Coal and Iron Co.'s Lessee v. Detmold*, 1 Md. 225, 237–38 (1851).

Under Paragraph 16 of the Deed of Trust, appellant's ownership rights to the property would be divested only if it defaulted under the Deed of Trust or the note secured thereby and Perpetual chose to repossess the property. There is no contention that appellant was in breach of the Deed of Trust at the time it initiated the ejectment action against appellee on 30 September 1993. Appellant, therefore, had ownership rights in the property that would permit it to maintain an ejectment action against a third party.

## B. *Assignment of Leases*

■ We next must determine what effect appellant's assignment of the leases to Perpetual by Paragraph 37 of the Deed of Trust had on its ability to maintain an ejectment action against appellee. Because an assignment is a contract, the intention of the parties to the assignment is determined by " 'what a reasonable person in the position of the parties would have thought it meant.' " *James v. Goldberg,* 256 Md. 520, 526–27, 261 A.2d 753 (1970) (quoting *Chesapeake Isle, Inc. v. Rolling Hills Dev. Co.,* 248 Md. 449, 453, 237 A.2d 1 (1968)). If the terms of the assignment are clear and unambiguous, there is no room for construction and the court "must presume that the parties meant what they expressed." *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985).

We shall first address appellant's contention that it did not need RTC's consent because "the requirement of consent to terminate a lease ... is only operative as a limitation of the right to terminate a tenant upon a default of the Deed of Trust." Appellant maintains that, since "no default has occurred nor has one been alleged, no consent was required for [appellant's] initiation of the breach of lease action." Appellant essentially argues that the provision in Paragraph 37 that requires appellant to obtain the assignee's prior written consent before terminating a lease becomes effective only if appellant breaches the Deed of Trust. We disagree with that interpretation of the assignment.

■ The assignment of the leases operates as additional security for the debt evidenced by the Deed of Trust Note by giving the assignee control over the revenue-producing aspect of the property. *See Wright v. Home Beneficial Life Ins. Co.,* 155 Ga.App. 241, 270 S.E.2d 400, 402 (1980). This security is valuable to the assignee/note holder not only in the event of a default but during the entire life of the Deed of Trust. The rents derived from the leases in the shopping center are the source of the funds to pay the installments on the note. By virtue of the assignment, coupled with the assignor's covenant

not to terminate any of the leases without the assignee's consent, the assignee has some degree of protection against a default. It would be unreasonable to conclude that the assignee would relinquish that measure of protection by allowing the assignor to terminate a revenue producing lease without the assignee's consent. Moreover, there is nothing in the language of Paragraph 37 to suggest that the requirement of assent by the assignee to termination of a lease by the assignor would be effective only in the event of a default by the assignor. Interpreting the language of the assignment in the light of what a reasonable person in the position of the parties would have meant at the time the Deed of Trust was executed, *General Motors Acceptance Corp.*, 303 Md. at 261, 492 A.2d 1306, we conclude that appellant is required to obtain the consent of RTC before it can terminate a lease, even if there is no default under the Deed of Trust.

In the present case, the circuit court granted appellee's motion to dismiss because it found that appellant had "contracted its power away to the secured party to terminate leases" when it assigned all of the leases to Perpetual in the Deed of Trust by an assignment that provided that appellant could not terminate a lease without obtaining the prior written consent of the assignee. The court stated that the "subsequent consent of the secured party did not cure the technical defect of having failed to obtain the prior consent of the [assignee]. The plaintiff, therefore, had no authority to commence the lease termination." In reaching that conclusion, the court relied on the decision of the United States Court of Appeals for the Eleventh Circuit in *F.W. Woolworth Co. v. Buford–Clairmont Co.*, 769 F.2d 1548 (11th Cir.1985).

In *F.W. Woolworth Co.*, Woolworth leased space in a shopping mall from Buford–Clairmont. Buford–Clairmont subsequently assigned the Woolworth lease to Jefferson Standard Life Insurance Company as additional security for the loan obtained by Buford–Clairmont to finance the shopping mall. The written assignment provided that Buford–Clairmont would not cancel the Woolworth lease without obtaining the written consent of Jefferson Standard, and that any attempt to

do so would be "null and void." Buford–Clairmont also executed a separate written covenant, which it gave Woolworth notice of in writing, that it would not exercise its option under Woolworth's lease to cancel the lease without first receiving Jefferson Standard's consent.

Years later, Buford–Clairmont notified Woolworth that it was exercising its option to terminate Woolworth's lease. At the time, Buford–Clairmont did not have Jefferson Standard's consent to terminate the lease. When Woolworth filed an action seeking a judgment declaring the rights and obligations of each party under the lease, the court held that Buford–Clairmont could not validly exercise its option to terminate Woolworth's lease without Jefferson Standard's consent. 759 F.2d at 1555.

In reaching its decision, the court, noting that "Woolworth might not have standing to enforce any rights under the assignment itself," *id.* at 1554 n. 8, stated that the "assignment of the lease from Buford–Clairmont to Jefferson Standard affected not the *rights* of Woolworth, but the *powers* of Buford–Clairmont." *Id.* at 1554 (emphasis in original). According to the court, the only control an assignor debtor has over the collateral assigned as security for a debt is "a right of redemption upon payment of the debt, and any other rights and powers permitted by the assignment contract." *Id.* at 1554–55 (citations omitted). Therefore, when Buford–Clairmont assigned the lease to Jefferson Standard, "[it] contractually relinquished its right and power to terminate the lease without the consent of Jefferson Standard," since such consent was required by the assignment contract. *Id.* at 1555.

In response to Buford–Clairmont's contention that the fact that Jefferson Standard eventually granted its consent cured any technical failure to acquire the consent at the time the lease was terminated, the Court stated as follows:

This argument is without merit. Such a holding would place the tenant, Woolworth, in the position of hopelessly inconsistent obligations: the obligation to vacate the premises since the termination might later be consented to by the

lender, and the obligation to continue paying rent since the lender might not consent to the termination and could sue the tenant directly for rent under the terms of the assignment.

*Id.*

The *F.W. Woolworth* decision draws a distinction between the right of a party to terminate a lease and the "power" of a party to terminate a lease in cases where the lease was assigned. A party's right to terminate a lease is derived from its ownership rights in the property. A party's "power" to terminate a lease stems from the contractual language of the assignment. Although we agree with the logic of the *F.W. Woolworth* decision, we conclude that it is factually distinguishable from the case *sub judice* and, thus, is not persuasive.

Initially, we note that the language of the provision assigning the leases in the present case demonstrates that the assignment was made for the benefit of the assignee as additional security for the Deed of Trust Note. Even if we accept appellee's and the circuit court's contention that appellee had notice of the clause as a result of its publication in the land records of Montgomery County, such notice does not give appellee standing to enforce, against appellant, the provision requiring appellant to obtain the assignee's consent before terminating a lease. *See Parlette v. Parlette*, 88 Md.App. 628, 637, 596 A.2d 665 (1991) (stating that an incidental beneficiary to a contract has no rights against the contracting parties).

We do, however, recognize that appellant's assignment of the leases, although not affecting appellee's rights, does affect appellant's "power" to terminate appellee's lease. *See F.W. Woolworth Co.*, 769 F.2d at 1554. Therefore, we shall address the *Woolworth* court's analysis of whether an assignor has the requisite "power" under the terms of the assignment to validate its actions. In other words, we must determine whether appellant in the present case was required, under the assignment, to obtain RTC's consent before initiating an ejectment action against appellee.

In the case *sub judice,* the assignment of the leases and the limitation on appellant's power to terminate the assigned leases is contained in Paragraph 37 of the Deed of Trust, which provides, in pertinent part, as follows:

> *ASSIGNMENT OF LEASES AND RENTS.* As part of the consideration for the loan evidenced by the Note, [appellant] hereby absolutely and unconditionally assigns and transfers to the Lender the leases, whether now or hereafter executed, pertaining to the Property and the rents and revenues therefrom, including those now due, past due, or to become due. . . . The Grantor authorizes the Lender or Lender's agent to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rent to the Lender or Lender's agent; provided, however, that prior to written notice given by the Lender to the Grantor of the breach by the Grantor of any covenant or agreement of the Grantor in the Deed of Trust, the Grantor shall collect and receive all rents and revenues of the Property as Trustee for the benefit of the Lender and the Grantor, and apply the rents and revenues so collected to the sums due and owing under this Deed of Trust, with the balance, so long as no such breach has occurred, to the account of the Grantor. . . . [Appellant] will not, without the prior written consent of the Lender . . . terminate . . . any lease. . . .

This provision assigned appellant's right to the rents and revenues derived from the leases to the "Lender." It also, however, authorized appellant to continue to collect the rents and revenues, use them to pay the Deed of Trust Note, and retain any additional revenue. The terms of the assignment required appellant to obtain the consent of the "Lender" (presently RTC) before effectively terminating any of the leases associated with the property. In contrast to the assignor in *F.W. Woolworth,* whose attempts to terminate the lease without the assignee's consent were, by virtue of the terms of the assignment, "null and void" *ab initio* and who therefore lacked the "power" to terminate the lease, the language of this assignment did not require appellant to obtain the assignee's

consent before *initiating* termination proceedings against a lessor and did not render the attempt to terminate the lease "null and void" *ab initio*. Appellant, therefore, had the "power" to initiate an ejectment action against appellee without RTC's written consent, since such action does not constitute an actual termination of the lease. Only after the court issues an order ejecting a tenant from the leased premises would the tenant's lease be terminated. Until then, the tenant has the right to occupy the premises and remains liable for rent.

The circuit court properly concluded that, in order to protect appellee from inconsistent obligations, appellant needed either to join RTC as a party to the ejectment action or to obtain RTC's consent to terminate appellee's lease before the court could issue an order ejecting appellee. The circuit court's reasoning that the "subsequent consent of [RTC] did not cure the technical defect of having failed to obtain the prior consent of [RTC]" is, however, erroneous. The attempt by appellant to evict appellee without having RTC's consent was not void *ab initio;* the defect in appellant's power was curable at any time before the issuance of a writ of ejectment.

Presumably, the court was concerned that, like the appellant in *F.W. Woolworth,* appellee could be subject to inconsistent obligations: appellee could be ejected from the property, yet still be liable to RTC for rent. *See F.W. Woolworth,* 769 F.2d at 1555. That concern, however, is inapplicable in the present case; by consenting to appellant's action to evict appellee, RTC has relieved McDonald's of any inconsistency in its obligations to appellant and to RTC.

In summary, we conclude that the Deed of Trust is, in effect, a mortgage, because it was granted as security for appellant's indebtedness to Perpetual. Because Perpetual intended that appellant would possess and manage the property after appellant executed the Deed of Trust, the property was redemised to appellant, thus giving appellant the right to maintain an ejectment action against all parties except RTC, subject to the limitations in the assignment of the leases. Having determined that the lack of consent from RTC to

terminate the McDonald's lease was a defect in appellant's power to maintain the action that was curable at any time before the issuance of a writ of ejectment, we conclude that the lower court erred in dismissing the action on the ground that appellant "had no authority to commence the lease termination." Because the basis for the circuit court's granting of appellee's Motion to Dismiss was not "legally correct," we must reverse. *See Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993).

We shall not address the second issue presented by appellant, which asks this Court to reverse the circuit court's denial of appellant's Motion for Partial Summary Judgment, or the additional issue presented by appellee's cross-appeal, which asks this Court to reverse the circuit court's denial of appellee's Motion for Summary Judgment or in the Alternative Motion to Dismiss. A court "has the discretion to deny a motion for summary judgment so that a more complete factual record can be developed...." *Decoster Co. v. Westinghouse Electric Co.*, 333 Md. 245, 262–63, 634 A.2d 1330 (1994) (citations omitted); *see also Presbyterian Univ. Hosp. v. Wilson*, 99 Md.App. 305, 313–14, 637 A.2d 486 (1994). Absent a clear showing of abuse, which is not present in this case, the court's decision will not be disturbed on appeal. *Metropolitan Mortgage Fund, Inc. v. Basiliko*, 288 Md. 25, 28–29, 415 A.2d 582 (1980). Accordingly, neither of the circuit court's rulings denying appellant's and appellee's motions for summary judgment can be deemed to be reversible error.

In reversing the circuit court's dismissal of the action, we do not reach the basic underlying issues of whether appellee breached the lease and, if it did, whether appellant is entitled to evict appellee from the premises. Those issues, although raised below, have not been addressed or decided by the circuit court. Presumably they will be matters for determination upon remand.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.